Walter F. Eggers, III, WSB No. 6-3150
HOLLAND & HART LLP
2515 Warren Ave., Suite 450
Cheyenne, WY 82003-1347
Phone: (307) 778-4200
weggers@hollandhart.com

John F. Shepherd, *pro hac vice* pending
Tina Van Bockern, *pro hac vice* pending
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8000
jshepherd@hollandhart.com
trvanbockern@hollandhart.com
*Attorneys for Petitioner Cloud Peak Energy Inc.*

Keith S. Burron, WSB No 5-2884
The Burron Firm, LLC
1695 Morningstar Road
Cheyenne, WY 82009
Phone: (307) 631-7372
keith@burronlaw.com

Peter J. Schaumberg, *pro hac vice* pending
James M. Auslander, *pro hac vice* pending
BEVERIDGE & DIAMOND, P.C.
1350 I St., N.W., Suite 700
Washington, DC 20005
Phone: (202) 789-6009
pschaumberg@bdlaw.com
jauslander@bdlaw.com
*Attorneys for Petitioners National Mining Association,
and Wyoming Mining Association*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| CLOUD PEAK ENERGY INC.; NATIONAL MINING ASSOCIATION; and WYOMING MINING ASSOCIATION, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Case No. 19CV120-S |
| UNITED STATES DEPARTMENT OF THE INTERIOR; DAVID BERNHARDT, in his official capacity as Secretary of the U.S. Department of the Interior; OFFICE OF NATURAL RESOURCES REVENUE; and GREGORY GOULD, in his official capacity as Director of the Office of Natural Resources Revenue, | ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

## PETITION FOR REVIEW OF FINAL AGENCY ACTION

Petitioners Cloud Peak Energy Inc. (Cloud Peak), National Mining Association (NMA),

and Wyoming Mining Association (WMA) submit this Petition under the Administrative

Procedure Act (APA), 5 U.S.C. §§ 701-706 and U.S.D.C.L.R. 83.6.  On July 1, 2016, the U.S.

Department of the Interior's Office of Natural Resources Revenue (ONRR) issued a final rule radically changing how federal and Indian coal production, as well as federal oil and gas production, are valued for royalty purposes. *See* Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform, 81 Fed. Reg. 43,338 (July 1, 2016) (the Final Rule). The Final Rule is part of the previous administration's war on coal, intended in particular to punish lessees that seek international customers for their coal. It purports to promote "greater simplicity, certainty, clarity, and consistency in product valuation," but does the exact opposite. It is invalid and must be set aside because it exceeds ONRR's authority under applicable statutes and lease terms, is arbitrary and capricious, and violates the Export Clause of the Constitution. 5 U.S.C. § 706.

ONRR now acknowledges that the Final Rule should not stand. After issuance of the Final Rule, and before it first was to apply to coal production, ONRR recognized that the Final Rule is fundamentally defective. After Cloud Peak, NMA, WMA, and other petitioners challenged the Final Rule in this Court, ONRR reconsidered the Final Rule and undertook a new rulemaking process rescinding it. *See Cloud Peak Energy, Inc., et al. v. USDOI*, Case No. 16-cv-315 (filed Dec. 29, 2016); "Repeal of Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform 82 Fed. Reg. 36,934 (Aug. 7, 2017) ("Repeal Rule"). Based on the Repeal Rule's mooting of the Final Rule, this Court stayed the prior litigation, and subsequently all petitioners voluntarily dismissed that litigation without prejudice. Fed. R. Civ. P. 41(a)(1)(A)(i). Environmental groups and the States of California and New Mexico then challenged the separate Repeal Rule in a different forum than this Court – the U.S. District Court for the Northern District of California – which vacated the Repeal Rule without addressing the merits of the Final Rule. *See State of Cal., et al. v. USDOI*, No. 17-5948, ECF Nos. 72, 73 (Apr. 12, 2019).

In both promulgating its Repeal Rule and defending it in federal court, ONRR acknowledged the Final Rule's core shortcomings and lack of meaningful expected royalty benefits. In the government's own words, "[t]he defects in the [Final] Rule permeated all aspects of mineral valuation, impacting oil, gas, and coal from the contract phase through to the sale of derivative products, such as electricity. ONRR was unable to resolve those flaws despite months of effort and dozens of inquiries from lessees. . . . The [Final] Rule's defects were substantial and pervasive, and they compromised ONRR's mission to collect, verify, and distribute royalties each month." *Id.*, ECF No. 57, at 1-2. Yet despite industry raising similar and detailed comments during the rulemaking process, the Final Rule wholly ignored them in an effort to ensure the new regulations applied to production by January 1, 2017, mere days before the end of the previous Administration. As now confirmed even by ONRR, the reinstated Final Rule is arbitrary and capricious and exceeds ONRR's authority under applicable statutes and lease terms and must be set aside.

## PARTIES

Cloud Peak is one of the largest and safest producers of low sulfur, high quality subbituminous coal in the United States. The company has two distinct businesses. It wholly owns and operates three Powder River Basin coal mines (two in Wyoming and one in Montana), which have been mining and shipping coal since the mid-1970s. It also provides logistics services to some of its domestic and international customers, which requires Cloud Peak to incur substantial risk and costs wholly distinct from its coal mining business. Cloud Peak has received awards for its commitment to safety and environmental compliance and initiatives.

NMA is a national trade association representing America's mining industry. NMA's members are producers of most of America's coal, metals, industrial and agricultural minerals;

manufacturers of mining and mineral processing machinery and supplies; transporters; financial and engineering firms; and other businesses related to mining. A significant number of NMA's members operate leases on federal and Indian lands with royalty obligations in Wyoming and other states.

WMA is a trade organization that represents the interests of mining companies, including coal producers, that operate mining properties in the State of Wyoming. WMA's coal membership is made up of coal companies (Coal Members) producing in the Powder River Basin and Southwest Wyoming. WMA promotes the interests of its Coal Members, including those interests in the present and future economic viability of the coal industry and in the consistent, rational and prudent regulation of that industry.

Cloud Peak, NMA, and WMA jointly filed a prior lawsuit against the Final Rule in this Court. That action was voluntarily dismissed without prejudice following the effective date of the Repeal Rule. NMA and WMA also intervened in the California litigation regarding the Repeal Rule.

## **LEGAL BACKGROUND**

Under the Mineral Leasing Act of 1920, as amended by the Federal Coal Leasing Amendments Act of 1976, the value of coal production for royalty purposes is based on the "value of coal," not some other energy commodity like electricity or certain services that may increase the value of the coal. Moreover, as ONRR concedes, pursuant to statutory and lease terms, value is determined "at or near the mine" where the coal is produced. For decades, ONRR's regulations have followed these basic principles. Thus, where a lessee sells or transfers coal to an affiliated entity, the regulations have employed a series of hierarchical "benchmarks" designed to determine the value of the coal at or near the mine, principally by comparison to

4

prices paid for comparable coal under arm's-length contracts and index prices in the area where the mine is located. Only if all the preferred benchmarks were inapplicable could ONRR require a lessee to calculate a value of the coal based on a netback method.

A netback method starts with an arm's-length based sale price for the coal (even if the sale occurs several thousand miles from the source mine), and subtracts certain costs incurred to deliver the coal to that sales point. The courts and the Department of the Interior have long recognized that a netback method is far less reliable than comparable sales, index prices, and other indicia of value at or near the mine, and, in addition, is complex and difficult to implement. That is why, for many decades, the ONRR regulations have imposed a netback method only as a "last resort."

## OVERVIEW OF THE FINAL RULE

Arbitrarily discarding longstanding and well-functioning rules for valuation of federal and Indian coal for royalty purposes, the Final Rule instead creates widespread uncertainty and, in many cases, makes compliance impossible.

The Final Rule deprives lessees of the ability to use well-established, reliable methodologies such as the comparable sales approach or index prices to determine a value of the coal at or near the mine and requires instead the uniform use of a netback method starting with the first arm's-length sale of the coal by the lessee's affiliate. In the case of international resales of coal, which often require a lessee's logistics affiliate to incur substantial risk and costs to provide logistics services, that resale and delivery of the coal could occur at ports on the Pacific Ocean or even in foreign countries in Asia or elsewhere. The Final Rule does not provide an adequate methodology to yield the value of the coal at or near the mine. Determining the value of the coal resold at a distant location necessarily requires adjustment for the value added by

logistics services, including transportation, to deliver the coal to that location. The Final Rule fails to specify the costs that ONRR will allow a lessee to deduct in circumstances involving international resales to arrive at a value of coal at or near the mine.

For certain dispositions of coal production from federal and Indian leases, the Final Rule also values the wrong energy commodity. Contrary to the Mineral Leasing Act which requires payment of a royalty based on the value of coal, under the Final Rule a coal lessee that delivers coal to an affiliated power plant which then sells the electricity at arm's length must calculate royalty based on the price for the electricity generated by "the" coal. The proceeds received from the sale of electricity do not represent the value of the coal at or near the mine. Electricity sales prices are highly regulated and determined based on unique regulatory factors and market forces rather than the value of any particular coal feedstock. Moreover, the allowed deductions do not account for all of the value added by converting coal to electricity, so the Final Rule effectively places a royalty on the value that an electricity generation business adds to the value of the coal at or near the mine. Most importantly, it is infeasible to determine the price of electricity produced from "the" coal due to, *e.g.*, the mix of fuel sources at a given power plant, unavailability of utility and electricity customer information to a coal lessee, stockpiling, accounting limitations, and multiple methods for selling electricity.

The Final Rule also is improperly applying to the price of electricity a statutorily directed royalty rate percentage applicable only to coal. Moreover, ONRR made no effort to explain how the generation and transmission allowances applicable to geothermal steam power plants, which the Final Rule simply incorporates, apply equally to coal-fired plants. Finally, if the disposition of electricity is not arm's-length, in derogation of ONRR's express statutory responsibility to specify value by rule, the Final Rule specifies no valuation method, and instead unilaterally

reserves to ONRR complete discretion to later determine royalty value. Tellingly, ONRR does not include the price of electricity among the factors it would consider, consistent with its admission that it has "limited experience" with this methodology.

ONRR's Final Rule also adopts what it calls a "default" provision, by which ONRR can retroactively increase the amount of royalty due even if the lessee followed ONRR's valuation regulations to a tee in initially paying its royalties. This gives the agency broad new power and defeats the very purpose and need of having regulations for lessee valuation in the first instance. ONRR can invoke the default provision in broad circumstances, including if "for any reason" ONRR cannot determine that a lessee properly paid royalty. Further, ONRR claims it can demand additional royalty if the lessee's sales price is 10% lower than the "lowest reasonable price," or if transportation or processing allowances are 10% higher than the "highest reasonable measures" of such costs—facially circular and arbitrary standards.

Under the Final Rule, years after a sales contract is made, coal is produced, and royalty is paid, ONRR can arbitrarily demand additional royalty, and substantial late payment interest. Moreover, in doing these unilateral calculations, ONRR ironically would utilize the very benchmarks and metrics proximate to the mine that ONRR is not permitting lessees to use. This reservation of unilateral valuation authority divorced from any predictable, objective criteria observable by lessees is neither fair nor consistent with the statutory authority Congress has delegated to the agency or the lease contract the lessee entered.

The Final Rule contains several other legally problematic provisions. For example, many of its shortcomings are exacerbated in its provisions singling out coal cooperatives without support. ONRR also fails to justify its erroneous conclusion that its Final Rule will somehow have a neutral or even positive economic effect on the coal industry.

7

## LACK OF STATUTORY AUTHORITY

The Final Rule exceeds ONRR's statutory authority because, under the applicable statutes and binding corresponding lease terms, the government's royalty must be based on the "value of coal" determined "at or near the mine." *See* 30 U.S.C. § 207(a); Senate Rep. No. 94-296, 49 (1976). ONRR violated those principles by (i) requiring lessees to value sales or resales based on a netback method which ONRR concedes is unworkable, with no option to value coal based on arm's-length prices in the mine area, and (ii) requiring lessees that transfer coal production to an affiliated power plant to pay royalty based on the value of electricity, an entirely different commodity than coal. The rule's broad reservation of discretion to ONRR to second guess a lessee's valuation based on vague and unworkable standards violates the Mineral Leasing Act's directive that the Secretary define value by rule. As ONRR has conceded, the Final Rule "had defects that undermined its purposes, compromised lessees' ability to comply, and undermined ONRR's ability to determine and verify royalties." *State of Cal.*, ECF No. 57 at 7. By contrast, the legality of the preexisting regulations under statute has never been challenged.

## THE FINAL RULE IS ARBITRARY AND CAPRICIOUS

The Final Rule is arbitrary and capricious for numerous reasons, including: (i) lessees face perpetual uncertainty on whether their royalty payments are correct, or whether ONRR will interject its own black box valuation under its default provision many years in the future; (ii) ONRR prohibits coal lessees from valuing coal based on a published or adjusted index price proximate to the mine, yet in the same Final Rule grants oil and gas lessees the ability to use index prices instead of limiting valuation to a netback method; (iii) ONRR does not identify deductible transportation costs for coal lessees, but does so for oil and gas lessees, leaving coal

lessees to speculate on deductible costs at their peril; and (iv) while ONRR claims the Final Rule provides "greater simplicity, certainty, clarity, and consistency in product valuation for mineral lessees," the Final Rule is anything but simple, certain, clear or consistent. The Final Rule does not articulate any reasoned basis for why wholesale changes are needed to the existing royalty valuation system which is already subject to robust audits by regulatory authorities.

The Final Rule ignored detailed and meritorious concerns raised by Cloud Peak, NMA, WMA, and others during the rulemaking process and made almost no substantive changes to the proposed Rule. But even ONRR now concedes those public comments were well-founded. In fact, it was the prior Administration that first observed the defects and unworkability of the Final Rule. "Problems with the [Final] Rule surfaced soon after publication" on July 1, 2016, and by December 2016 ONRR realized that the Final Rule "contained several defects that . . . would seriously complicate, and probably compromise, ONRR's ability to implement and enforce" the Final Rule. *State of Cal.*, ECF No. 57 at 4. With implementation scheduled in January 2017, it was left to the new Administration that took office that month to address the dysfunctional Final Rule. *Id.* It was improper for ONRR not to fix these problems in the Final Rule before promulgating it and upending the functional royalty valuation regime, and any effort to implement the Final Rule with its acknowledged central deficiencies is the essence of arbitrary and capricious.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331. Respondent Department of the Interior is a federal agency of the United States within the scope of 5 U.S.C. § 701(b)(1) (APA) and 28 U.S.C. § 1391 (venue). Respondent ONRR is a federal agency within the U.S. Department of the Interior with responsibility for implementing the federal and Indian royalty

program.  Respondents Bernhardt and Gould are respondents in their official capacities and officers of the United States, which has waived its sovereign immunity under the APA, 5 U.S.C. § 702.  Venue is proper under 28 U.S.C. § 1391(e) because multiple petitioners and their members have their principal place of business in Wyoming and the Final Rule will directly and adversely affect their mining and operations involving federal coal leases in Wyoming.

Dated this 12th day of June, 2019.

Respectfully submitted,

Walter F. Eggers, III, WSB No. 6-3150
HOLLAND & HART LLP
2515 Warren Ave., Suite 450
Cheyenne, WY  82003-1347
Phone: (307) 778-4200
weggers@hollandhart.com

John F. Shepherd, *pro hac vice* pending
Tina Van Bockern, *pro hac vice* pending
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado 80201-8749
Phone: (303) 295-8000
jshepherd@hollandhart.com
trvanbockern@hollandhart.com
mpcastelli@hollandhart.com

ATTORNEYS FOR PETITIONER CLOUD PEAK
ENERGY INC.

Keith S. Burron, WSB No 5-2884
The Burron Firm, P.C.
1695 Morningstar Road
Cheyenne, WY 82009
Phone:  (307) 631-7372
keith@burronlaw.com

Peter J. Schaumberg, *pro hac vice* pending
James M. Auslander, *pro hac vice* pending
BEVERIDGE & DIAMOND, P.C.
1350 I Street, NW, Suite 700
Washington, DC 20005-3311
Phone: (202) 789-6009
pschaumberg@bdlaw.com
jauslander@bdlaw.com

**ATTORNEYS FOR PETITIONERS NATIONAL MINING ASSOCIATION, AND WYOMING MINING ASSOCIATION**

13104672_v1

11